We'll move next to argument in No. 22-342, United States v. Sterritt. Ms. Cardi. Good morning, Your Honors. I am Dawn Cardi, and I represent Mr. Richard Sterritt. This case is not a presumption case. There is no violence in this case. There are no drugs in this case. There are allegations of fraud. This is a case where bail should be presumed to be appropriate. This Court has said it is only under a limited group of offenders who should be denied bail pending appeal. But just to clarify, you didn't appeal the actual order denying bail. You filed a later motion, which you said was a motion to reconsider the first bail decision. So is that effectively a motion to reopen the bail proceedings? No, it's a motion to re-argue because I was not the original attorney on the matter. The original attorney on the matter, Mr. DiChiara, filed a bail motion. But he filed that bail motion without all of the supportive documentation that I, as I was assigned. There was an original bail motion and an order denying bail, and then you came along later and asked to reconsider it. That's correct. And we have a procedure for reopening the bail proceedings, right? Usually you'd have to show that there's a change in material circumstances. Correct. And do you think that you meet that standard here? I do, absolutely. Okay, so what are the change circumstances that would justify reopening the bail proceedings? I think the change in circumstances were multifold. One was that the issue regarding his medical condition really spoke to both his ability to flee, for example, and whether or not he could be a danger to the community. His multiple serious medical conditions, which cannot be treated by the Metropolitan Detention Center, and having done this for 40 years, I can assure you that if Mr. Sterritt has a heart attack, it's very unlikely that he is going to survive because he will never get the kind of emergency treatment that is necessary. You can see that he is 65 years old. He's had his colon removed. He has a big lump on his chest. He suffers from diabetes. He suffers from high blood pressure. He suffers from all types of ailments that are serious and need medical attention, and he's not getting that medical attention. In addition to that, those serious medical conditions really do keep him from being any risk of flight. It is highly unlikely that Mr. Sterritt is going to be out there fleeing. And quite frankly, the government has shown no actual resource for him to flee, no money for him to flee. I mean, every one of the other defendants in this case are out on bail charged with the very same huge fraud that Mr. Sterritt is charged on. And I believe, Your Honor, that we have presented a combination of conditions that would assure the court that Mr. Sterritt could not flee and would not be a danger to the community. The only thing that we discovered as we were going through our, and believe me, we're not even near through discovery, reviewing discovery in this case, was that there was a conversation from a confidential source of the government. They were the ones who brought up the idea of some submarine off in international waters. There was a confidential source conversation. I believe it's the very same conversation where that confidential source says, let's go to Costa Rica. No proof of going to Costa Rica. No proof of going out on international waters. And last but not least, the confidential source says, oh, maybe we can hide the money in kilos. And that's when Mr. Richard Sterritt, on their own saying, says, absolutely not. So that's the, in thousands and thousands and thousands of phone calls, conversations, this little piece of evidence is supposed to suggest that my client has a risk of flight? I mean, respectfully, I do think that it was an abuse of discretion, and it is clear error to have kept Mr. Sterritt incarcerated on bail. What could, the package makes enormous sense. First of all, he doesn't have to be on the Internet. I have cases where my clients are prohibited from the Internet. He doesn't even have to have a cell phone. He can be required to- Okay, Ms. Berry, I think we understand that. Okay. You've reserved time for rebuttal, so we'll hear from you again, but let's hear first from the government. Mr. Axelrod. Good morning, Your Honor. Nick Axelrod on behalf of the government, and I also represented the government in some of the proceedings below. The district court did not clearly err when it found that the defendant's medical treatment at the MDC was not material, material to the issue of bail, because it did not mitigate the well-established risk of flight and dangerousness in this case. Richard Sterritt is a serial fraudster who was not deterred by the SEC's efforts to halt trading on two separate occasions, separate trading in two public companies, who bragged in a recorded phone call about how he had evaded his probation officer's surveillance in connection with his prior securities fraud conviction, and who orchestrated a market manipulation scheme that requires really little more than a cell phone and Internet access. In seeking to reopen bail, which is, Your Honor, Judge Monashi, that is what they were seeking to do. In seeking to reopen bail, the defendant proposed that he be released to live with his alien 88-year-old mother in substantially the same circumstances in which he was living when he committed the charged offenses, and secured only by a $100,000 personal recognizance bond. What did he point to? He did not point to a new medical condition. He did not point to anything in his medical records that shows a meaningful deterioration in his condition. And this is not a case— But there's a lot more extensive documentation of the extent of his medical conditions, right? Respectfully, Your Honor, I think the thrust of the conditions was available, and the district court actually mentioned it at the May bail hearing. That's A, 133, and then again at 137 and 138. Mr. DiChiara had brought to the court's attention his heart conditions, which are the primary conditions that he complained about, the primary conditions in dispute. And they were also discussed at the bail hearing in Texas. There was a very robust record to these things. He didn't point—you know, sometimes we see bail decisions or reopening motions where there's been discovery and the defense says, well, what the district court was told about the charged offenses, what the indictment said, really makes it look worse than it was. And here's why he's not as much of a risk. None of that is the case here. That's not this case. The government's evidence is overwhelming. And there hasn't been a dispute in the papers before the court about that. What he pointed to was a series of incidents in which there was a disagreement between the defendant and his doctors over whether he needed to go to the hospital. And the district court looked at those disagreements. It reviewed the medical records, and it made a factual determination that the MDC had taken the defendant to the hospital when necessary. That determination is entitled to deference, and it was supported by the record. Moreover, Your Honor, the medical conditions that he suffers from, he suffered from all of the same conditions when he perpetrated the charged offenses. There was no allegation that there was a new condition. Those conditions did not prevent him from traveling around the country. He went to Florida, New York, California. The district court cited that travel in the May determination as well, Your Honor. It didn't prevent him from doing any of that travel. And so those conditions simply don't have any bearing on the factors that the court considers in connection with the bail determination. They don't make him less likely to commit another fraud. He doesn't need to be. There is some bearing, but your argument is it didn't prevent him from traveling before, and so it doesn't overcome the risk of flight, is what you're saying. That's true, Your Honor. It's irrelevant. It obviously makes it less likely. And there could be a change in condition that could truly bear on bail. You know, if, for instance, he needed kidney dialysis, I think we can all acknowledge that that would be the sort of thing that would be difficult to get while you're on the lam, for instance. That's not what happened here. These are discrete events, discrete incidents where he was seen by a doctor and the doctors say, You're actually fine. And the test results that they do at the time bear that out. For instance, in October of 2021, when he says there was pepper spray on my unit and I can't breathe, he has 99% oxygen saturation. And so they say, You know what? You can breathe and you're speaking to me and you're fine. And so they've evaluated him. And that's what the medical records show. They show time and again he's brought an issue to the attention of the medical staff. They've reviewed it promptly. And they found, Oh, your heart rate is fine. You don't have any gallops or, you know, your blood pressure is stable. You don't need to go to the hospital right now. And he says forthrightly, and this is the basis for the motion, I disagree. They've also taken him to the hospital. He went to the hospital on October 14th for a cardiology workup, and it's the next day that he says he needs to go back to the hospital. So this isn't a case where the MDC has refused to take him where necessary. They've paid very close attention to this defendant. At one point on July 27th, they actually write in the medical records, This is a defendant who has a low threshold to admit to the hospital because of his conditions. They're conscientiously caring for this defendant, and that's what Judge Matsumoto found. Okay. Thank you very much, Mr. Axelrod. We'll turn it back to Ms. Cardi on rebuttal. Conscientiously caring for Mr. Sterrett is an abomination. They first take him to the hospital. He's told that he has to come back to the hospital for additional tests. They tell him that the tests are not authorized. They tell him, Go back to the facility and pretend you fainted, so maybe they'll take you back so the tests will be authorized. Forty-five days later, he gets to go back. I mean, yes, could there be a new condition? The new condition can very well be his death, and I am not exaggerating that. There is proof after proof after proof that has come before this Court in decision after decision after decision about the inadequate, abominable medical care at the Metropolitan Detention Center for people like Mr. Sterrett. So that in and of itself is of deep concern to me when the government tends to rely on Judge Matsumoto saying, Oh, he's being treated just fine. Unfortunately, I have had evidence that the medical community and the legal community at the Metropolitan Detention Center lie. So I do think that if that is an important issue, and I think it's an important issue, it should be an important issue, but I don't think it's one that the district court can so blithely say, Oh, everything is being taken care of. They have had internal, the chief judge has had to go to the Metropolitan Detention Center, in another case of mine, brought to this court and brought to the lower court because of the abominable medical care. So that cannot be. And in terms of, remember, at the lower court, the magistrate court, they found that he was not a risk of fight. Their concern was danger to the community. Well, there can't be danger to the community if he can't be on the Internet, he can't go out, he can't use a phone. Then there is no danger to the community. And why should this man, I have many other security fraud cases, why should this man be here? I think we need an argument, Ms. Cardi. And the other thing is that if there was money, he wouldn't be hiring, he wouldn't have CJA counsel. And there is none. And the government's had years to prove whether or not there's some bucket of money out there that he can use to go to Costa Rica or buy a submarine. It's just not going to happen. This man is 65 years old and he should be out while he is fighting what is a very complex case. So I ask your honors to seriously consider this and what we presented in our papers. Thank you. Thank you very much, Ms. Cardi. The case is submitted. And because that is the last argued case on our calendar for today, we are adjourned. Court is adjourned.